UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RICHARD LOPEZ,                                    :

               Petitioner,                     :        05 Civ. 7060 (AJP)

          -against-                              :        **OPINION AND ORDER**

DAVID MILLER, Superintendent,                     :

               Respondent.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

             Pro se petitioner Richard Lopez seeks a writ of habeas corpus from his June 25, 2003 conviction, after his guilty plea in Supreme Court, New York County, of two counts of fourth degree criminal possession of stolen property, one count of second degree burglary, and one count of second degree attempted robbery, for which he received concurrent sentences of two to four years, nine years, and seven years, respectively. (Dkt. No. 1: Pet. ¶¶ 1-5.) Lopez's habeas petition claims that: (1) "[t]he trial court deprived [Lopez] of his rights to counsel by not assigning him conflict-free counsel after [Lopez] asserted that his counsel had coerced him into pleading guilty" (Pet. ¶ 13(1)); and (2) Lopez "was deprived of his right to effective and conflict-free representation at sentencing, on his motion to withdraw his plea and at his reasonable request for an <u>Argentine</u> hearing" (Pet. ¶ 13(2)). The parties have consented to decision of Lopez's habeas petition by a Magistrate Judge. (Dkt. No. 8.)

             For the reasons set forth below, Lopez's habeas petition is <u>DENIED</u>.

# FACTS

**May 20, 2003 Guilty Plea Proceeding**

On May 20, 2003, Richard Lopez pled guilty before Justice Carol Berkman to two counts of fourth degree criminal possession of stolen property, one count of second degree burglary, and one count of second degree attempted robbery. (Dkt. No. 5: Dannelly Aff. Ex. A: 5/20/03 Plea Tr. 2, 9.)

During the plea allocution, Lopez admitted that when arrested for shoplifting on March 25, 2003, he possessed stolen debit and credit cards "with the intent to benefit" himself. (Plea Tr. 2-3.) Lopez also admitted that on January 14, 2003, he "knowingly entered unlawfully into a dwelling at 37 West 76th Street" by crossing over to the roof and entering through the apartment's terrace window. (Plea Tr. 3-4.) Lopez also acknowledged that on the same day, he attempted to enter an apartment at 160 West 76th Street through the terrace window in order to steal, but he was spotted and fled. (Plea Tr. 4.)

Justice Berkman noted that:

> The defendant is adjudicated a violent predicate felony offender. Now, Mr. Lopez, burglary in the second degree is a violent felony offense. Since you're a violent predicate the minimum is seven years, the maximum normally would be fifteen years, I have a note you have been to state prison a couple of times in the past, so you would be eligible to be considered as a discretionary persistent felony offender and receive the sentence of up to twenty-five years to life. I am promising you, however, a sentence of no more than ten years. . . . [and] I'm promising you concurrent time.

(Plea Tr. 5-6.)

Justice Berkman postponed Lopez's sentencing to give Lopez an opportunity to provide the court with "information which might lead somebody to say something good about" him, apparently referring to Lopez's desire to cooperate with the police.  (Plea Tr. 6-7.)  However, Justice Berkman warned Lopez that this did not translate into a promise that such information might persuade her to give Lopez a lesser sentence, as Justice Berkman noted that Lopez was "a career burglar and that people are more secure in their homes when [he is] locked up."  (Plea Tr. 7.)  Justice Berkman emphasized that optimism regarding a reduced sentence in her presence "is not a good idea."  (Plea Tr. 7.)

Justice Berkman questioned Lopez about whether any other promises influenced his guilty plea:

> [JUSTICE BERKMAN]:  Other than what I just told you, have there been any other promises made to you to get you to take this plea?
>
> THE DEFENDANT:  No, Your Honor.
>
> THE COURT:  Has anyone threatened or forced or coerced you to get you to take this plea?
>
> THE DEFENDANT:  No, Your Honor.
>
> THE COURT:  When you plead guilty it is just the same as though you were convicted after trial but you give up your trial rights . . . ; do you understand that?
>
> THE DEFENDANT:  Yes, Your Honor.

(Plea Tr. 7-8.)

**Sentencing**

          At the beginning of the sentencing hearing on June 25, 2003, Lopez's counsel, Annie

Costanzo, stated at sidebar:

> MS. COSTANZO:  Judge, we entered a plea on the last court date to all the
> counts in the indictment with the promised sentence of ten years.  It was
> contingent upon Mr. Lopez's cooperation with a firearms Detective.
>
> THE COURT:  If I could just stop you with that. As I recall this plea, it was
> not at all contingent on that.  I had previously offered Mr. Lopez eight years
> which Mr. Lopez declined.
>
>     On the next date, Mr. Lopez chose to plead to the entire indictment
> with a top of ten years and I informed him that I had nothing to do with that,
> that I was promising nothing in response to it and you proceeded to do that,
> and if I recall correctly . . . you informed me and you informed him [of] that.
> In fact there were no promises with regard to it even if they thought that his
> cooperation was fruitful.
>
> MS. COSTANZO:  He pled with a cap of ten years and if the People or the
> detective liked his information, he would be able to work it down with the
> court's approval. . . . [T]he Detective investigated the information and did not
> find it fruitful, and is not interested in working with the defendant.
>
>     I informed Mr. Lopez of that decision by the prosecutor and the
> detective and [Lopez] is now making the following allegations, first, that the
> D.A. did not deal with him fairly because it's his belief based on
> conversations with the Detective that the Detective really does want to work
> with him and Miss Beermann, the Assistant is being obstructionist.  The
> second allegation is that I coerced the defendant.

(Dkt. No. 5: Dannelly Aff. Ex. B: 6/25/03 Sentencing Transcript ["S."] 2-3.)

          Ms. Costanzo informed Justice Berkman that in light of Lopez's allegations, she

ethically would be unable to advise Lopez on his application to withdraw his guilty plea.  (S. 3-4.)

Ms. Costanzo recommended that Lopez be given new "counsel to advise him on whether he should

withdraw his plea." (S. 3-4.)  The sidebar concluded and Justice Berkman addressed Lopez directly in open court:

>THE COURT:  Okay.  I understand Mr. Lopez has an application prior to sentence.
>
>MS. COSTANZO:  Yes.  Mr. Lopez would like to make an application to withdraw his previously entered plea of guilty.
>
>THE COURT:  And why is that, sir.
>
>[MR. LOPEZ]:  I'm under the impression that my attorney here had coerced me into taking this plea.
>
>THE COURT:  How did she coerce you[?]
>
>[MR. LOPEZ]:  [W]hen she . . . offered to plea and I told her I did not want to take the plea and when she handed me the voluntary disclosure form and I saw that the day in question . . . I was . . . in the hospital and there was no possible way that I could have committed this crime . . . and she tells me what I'm supposed to say that I got into some . . . balcony or porch or something. These buildings . . . don't have any balconies or no porches, and how can I say I tried to enter an apartment by a balcony or porch when these buildings, they don't have that, and that's what [Ms. Costanzo said] the D.A. wants to hear.  That's what you have to tell him.

(S. 4-5.)

Lopez told Justice Berkman that his lawyer also had told him that "the district attorney was going to release [him] so that [he] could perform [his] services." (S. 6.) Lopez asserted that he at least was entitled to an Argentine hearing.[1]  (S. 6.)

---

[1]       An Argentine hearing is used "to determine whether a promise was made [to the defendant] and, if so, its exact nature and scope." People v. Argentine, 67 A.D.2d 180, 184, 414 N.Y.S.2d 732, 735 (2d Dep't 1979).  Significantly, in Argentine, affidavits from the A.D.A. and detective "provide[d] strong support for defendant's claim that a promise was indeed made to him." Id.

Justice Berkman ruled that "the record makes perfectly clear that there is no ground to withdraw [Lopez's] plea. (S. 8.) Although "Mr. Lopez has claimed that this is all his lawyer['']s fault," Justice Berkman did not "see any point to honor this self-serving allegation." (S. 8.) Justice Berkman denied Ms. Costanzo's request that "Mr. Lopez be assigned counsel to evaluate his request to withdraw his plea" (S. 9), pointing out:

> I understand that. And I already indicated that I see no reason to do that based upon [Lopez's] allegations that he was coerced. . . . [A]ll he says is that he made a free choice to take a plea which he's now unhappy with, but, I didn't hear any coercion involved. He says . . . he lied to the court because he wanted to. And now he's unhappy that his services to the community, rightly or wrongly, has been turned down, and though I told him I didn't care about that, so, Miss Costanzo, do you wish to be heard on sentence?
>
> MS. COSTANZO: Nothing further on the record.

(S. 9-10.)

Justice Berkman sentenced Lopez as a violent predicate felony offender to concurrent terms of two to four years, seven years and nine years. (S. 12.)

**Lopez's Direct Appeal**

Represented by new counsel (the Center for Appellate Litigation), Lopez's appeal to the First Department claimed that: (1) "the trial court deprived [Lopez] of his right to counsel by not assigning him conflict free counsel after [Lopez] asserted that his counsel had coerced him into pleading guilty" (Dkt. No. 5: Dannelly Aff. Ex. C: Lopez 1st Dep't Br. at 10-16); and (2) "the nine year sentence for burglary was excessive" (Lopez 1st Dep't Br. at 16-18).

On February 17, 2005, the First Department affirmed Lopez's conviction, holding in full that:

>           After sufficient inquiry, the court properly denied defendant's request to
> withdraw his guilty plea without appointing new counsel. Defendant received
> effective and conflict-free representation at sentencing. His assertion that his attorney
> misled him as to the terms and consequences of his plea was contradicted by the
> thorough plea allocution and was patently meritless. Accordingly, there was no
> conflict of interest requiring new counsel.
>
>           We perceive no basis for reducing the sentence.

People v. Lopez, 15 A.D.3d 285, 285-86, 789 N.Y.S.2d 497, 497-98 (1st Dep't 2005) (citations

omitted).

          On April 12, 2005, the New York Court of Appeals denied leave to appeal.  People

v. Lopez, 4 N.Y.3d 855, 797 N.Y.S.2d 429 (2005).

**Lopez's Federal Habeas Corpus Petition**

          Lopez's pro se habeas corpus petition asserts that:  (1) "[t]he trial court deprived

[Lopez] of his rights to counsel by not assigning him conflict-free counsel after [Lopez] asserted that

his counsel had coerced him into pleading guilty" (Dkt. No. 1: Pet. ¶ 13(1)); and (2) Lopez "was

deprived of his right to effective and conflict-free representation at sentencing, on his motion to

withdraw his plea and at his reasonable request for an Argentine hearing" (Pet. ¶ 13(2)).  (See

generally Lopez Traverse.)

<strong><u>ANALYSIS</u></strong>

**I.       THE AEDPA REVIEW STANDARD[2/]**

---

[2/]      For additional decisions by this Judge discussing the AEDPA review standard in language
substantially similar to that in this section of this Opinion and Order, see, e.g., Morris v.
Sears, 06 Civ.  2476, 2007 WL 1875665 at *6-9 (S.D.N.Y. June 29, 2007) (Peck, M.J.);
Harrison v. Walsh, 06 Civ. 13328, 2007 WL 1576265 at *12-15 (S.D.N.Y. June 1, 2007)
(Peck, M.J.); Brown v. Greene, 06 Civ. 4824, 2007 WL 1379873 at *8-11 (S.D.N.Y.  May
                                                                      (continued...)

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000). The AEDPA imposed a more stringent review standard, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

2/  (...continued)
11, 2007) (Peck, M.J.); Cassie v. Graham, 06 Civ. 5536, 2007 WL 506754 at *12-15 (S.D.N.Y. Jan. 31, 2007) (Peck, M.J.); Morales v. Artus, 05 Civ. 3542, 2006 WL 3821488 at *13-16 (S.D.N.Y. Dec. 28, 2006) (Peck, M.J.) (citing my prior decisions); Bryant v. Fischer, 05 Civ. 0437, 2005 WL 3418282 at *10-14 (S.D.N.Y. Dec. 14, 2005) (Peck, M.J.); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *5-8 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y. June 12, 2006) & 2006 WL 2689889 (S.D.N.Y. Sept. 19, 2006); Boyd v. Smith, 03 Civ. 5401, 2004 WL 2915243 at *5-7 (S.D.N.Y. Dec. 17, 2004) (Peck, M.J.) (citing my prior decisions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *12-14 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my prior decisions); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *14 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Mendez v. Artuz, 98 Civ. 2652, 2000 WL 722613 at *22 (S.D.N.Y. June 6, 2000) (Peck, M.J.), report & rec. adopted, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000), aff'd, 303 F.3d 411, 417 (2d Cir. 2002), cert. denied, 537 U.S. 1245, 123 S. Ct. 1353 (2003); Fluellen v. Walker, 97 Civ. 3189, 2000 WL 684275 at *10 (S.D.N.Y. May 25, 2000) (Peck, M.J.), aff'd, 41 Fed. Appx. 497 (2d Cir. 2002), cert. denied, 538 U.S. 978, 123 S. Ct. 1787 (2003).

(2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[3/]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 404-05, 120 S. Ct. at 1519.[4/]  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 412, 120 S. Ct. at 1523.[5/]  "That federal law, as defined by the

---

[3/]    <u>See also</u>, <u>e.g.</u>, <u>Henry</u> v. <u>Poole</u>, 409 F.3d 48, 67 (2d Cir. 2005), <u>cert. denied</u>, 547 U.S. 1040, 126 S. Ct. 1622 (2006); <u>Howard</u> v. <u>Walker</u>, 406 F.3d 114, 121-22 (2d Cir. 2005); <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d 193, 197 (2d Cir. 2004); <u>Dallio</u> v. <u>Spitzer</u>, 343 F.3d 553, 559-60 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 961, 124 S. Ct. 1713 (2004); <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting <u>Lainfiesta</u> v. <u>Artuz</u>, 253 F.3d 151, 155 (2d Cir. 2001), <u>cert. denied</u>, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

[4/]    <u>Accord</u>, <u>e.g.</u>, <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d 175, 181 (2d Cir.), <u>cert. denied</u>, 540 U.S. 1091, 124 S. Ct. 962 (2003); <u>Jones</u> v. <u>Stinson</u>, 229 F.3d 112, 119 (2d Cir. 2000); <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d 113, 125 (2d Cir. 2000), <u>cert. denied</u>, 532 U.S. 943, 121 S. Ct. 1404 (2001); <u>Clark</u> v. <u>Stinson</u>, 214 F.3d 315, 320 (2d Cir. 2000), <u>cert. denied</u>, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[5/]    <u>Accord</u>, <u>e.g.</u>, <u>Carey</u> v. <u>Musladin</u>, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from the Court regarding this [issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. 652, 659, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d 587, 591 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 1047, 124 S. Ct. 2171 (2004); <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d 1197, 1200 (2d Cir. 2002); <u>Yung</u> v. <u>Walker</u>, 341 F.3d 104, 109-110 (2d Cir. 2003); <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d 36, (continued...)

Supreme Court, may either be a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context."  Kennaugh v. Miller, 289 F.3d at 42.  "A petitioner cannot win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent."  Yung v. Walker, 341 F.3d at 110; accord, e.g., DelValle v. Armstrong, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .  A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[6]

In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the

---

[5] (...continued)
42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

[6] Accord, e.g., Brown v. Payton, 544 U.S. 133, 125 S. Ct. 1432, 1438-39 (2005); Bell v. Cone, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 123 S. Ct. at 1173-74; Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006), cert. denied, 127 S. Ct. 1267 (2007); Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir.), cert. denied, 126 S. Ct. 215 (2005); Tueros v. Greiner, 343 F.3d at 591; DelValle v. Armstrong, 306 F.3d at 1200; Yung v. Walker, 341 F.3d at 109; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[7/]  However,

"[t]he term 'unreasonable' is . . . difficult to define." Williams v. Taylor, 529 U.S. at 410, 120 S. Ct.

at 1522.  The Supreme Court made clear that "an unreasonable application of federal law is different

from an incorrect application of federal law." Id.[8/]  Rather, the issue is "whether the state court's

application of clearly established federal law was objectively unreasonable." Williams v. Taylor,

529 U.S. at 409, 120 S. Ct. at 1521.[9/]  "Objectively unreasonable" is different from "clear error."

Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper

---

[7/]     Accord, e.g., Brown v. Payton, 544 U.S. at 141, 125 S. Ct. at 1439; Wiggins v. Smith, 539
U.S. at 520, 123 S. Ct. at 2534-35; Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006), cert.
denied, 127 S. Ct. 1383 (2007); Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337
F.3d at 181.

[8/]     See also, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v.
Smith, 539 U.S. at 520, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at
1853 ("As we have explained:  '[A] federal habeas court may not issue the writ simply
because that court concludes that the state-court decision applied [a Supreme Court case]
incorrectly.'") (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360
(2002)); Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175; Hawkins v. Costello, 460
F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v.
Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at
197; Eze v. Senkowski, 321 F.3d at 124-25; DelValle v. Armstrong, 306 F.3d at 1200 ("With
regard to issues of law, therefore, if the state court's decision was not an unreasonable
application of, or contrary to, clearly established federal law as defined by Section 2254(d),
we may not grant habeas relief even if in our judgment its application was erroneous.").

[9/]     Accord, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v.
Smith, 539 U.S. at 520-21, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct.
at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1174-75; Woodford v. Visciotti,
537 U.S. at 25-27, 123 S. Ct. at 360-61; Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir.
2006); Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v.
Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Cox v. Donnelly, 387 F.3d at
197; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002);
Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 128-29.

deference to state courts by conflating error (even clear error) with unreasonableness.").  However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).[10/]  "[T]he range of reasonable judgment can depend in part on the nature of the relevant rule." Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149.[11/]

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme

---

[10/]   Accord, e.g., Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio v. Goord, 263 F.3d at 184.

[11/]   The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149; accord, e.g., Hawkins v. Costello, 460 F.3d at 243.

Court defined, legal principle to situations which that principle should have, in reason, governed."

Kennaugh v. Miller, 289 F.3d at 45.[12/]

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference."   Yung v. Walker, 341 F.3d at 109; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Mosby v. Senkowski, 470 F.3d at 519.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment.  When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

Sellan v. Kuhlman, 261 F.3d at 312; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court

---

[12/]    Accord, e.g., Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision.  There is force to this argument.  Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.  At the same time, the difference between applying a rule and extending it is not always clear.  Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

decision contradicts them."); Mosby v. Senkowski, 470 F.3d at 519; Hawkins v. Costello, 460 F.3d

at 243; Lynn v. Bliden, 443 F.3d at 246; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396

F.3d at 220; Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was

"'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a

'determination on the merits' and as such requires the deference specified by § 2254."  Moreover,

"[I]f any reasonable ground was available [for the state court's decision], we must assume that the

[state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the

Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants'

remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004);

Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise

Appellate Division disposition – the word 'denied' – triggered AEDPA deference.").

      Where the state court decision is not clear as to whether it rests on federal law or state

procedural law, the Second Circuit in Jimenez v. Walker, 458 F.3d 130, 145-46 (2d Cir. 2006), cert.

denied, 127 S. Ct. 976 (2007), instructed that the court must "examine the three clues laid out in

Coleman, Quirama and Sellan" – that is, "(1) the face of the state-court opinion, (2) whether the state

court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances."

Jimenez v. Walker, 458 F.3d at 145 & n.16.  Using these three factors, the court should

classify the decision as either:

> (1)    fairly appearing to rest primarily on federal law or to be interwoven
> with federal law or
>
> (2)    fairly appearing to rest primarily on state procedural law.

> Absent a clear and express statement of reliance on a state procedural bar, the Harris presumption applies to decisions in the first category and deems them to rest on the merits of the federal claim.  Such decisions are not procedurally barred and must be afforded AEDPA deference as adjudications "on the merits" under 28 U.S.C. § 2254(d).  The Harris presumption does not apply to decisions in the second category, which show themselves to rest on an independent state procedural bar.  Nor does it apply to decisions in the first category which contain a clear statement of reliance on a state procedural bar.  No AEDPA deference is due to these decisions, but the state may successfully assert that habeas relief is foreclosed provided that the independent state procedural bar is adequate to support the judgment and that neither cause and prejudice nor a fundamental miscarriage of justice is shown.

> The effect of these rules is to present federal habeas courts with a binary circumstance: we either apply AEDPA deference to review a state court's disposition of a federal claim or refuse to review the claim because of a procedural bar properly raised.  The middle ground . . . does not exist.

Jimenez v. Walker, 458 F.3d at 145-46 (citations & fns. omitted); accord, e.g., Hawkins v. Costello, 460 F.3d at 242 ("In Jimenez v. Walker, we recently made clear that when a state court rejects a petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the adjudication rested on the merits.").  Of course, "[i]f there is no [state court] adjudication on the merits [and no procedural bar], then the pre-AEDPA, de novo standard of review applies."  Cotto v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); see also Jimenez v. Walker, 458 F.3d at 145 n.17.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless."  Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); accord, e.g., Lynn

v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220.  "The petitioner bears the burden

of 'rebutting the presumption of correctness by clear and convincing evidence.'"  Parsad v. Greiner,

337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47.

## II.    LOPEZ'S CLAIM THAT THE TRIAL COURT DEPRIVED HIM OF HIS RIGHT TO COUNSEL BY NOT ASSIGNING HIM CONFLICT-FREE COUNSEL IS DENIED

### A.    Lopez's Guilty Plea Was Not Coerced[13]

Constitutional due process requires that a guilty plea be voluntary, knowing and

intelligent.  E.g., United States v. Ruiz, 536 U.S. 622, 629, 122 S. Ct. 2450, 2455 (2002); Bousley

v. United States, 523 U.S. 614, 618, 118 S. Ct. 1604, 1609 (1998); Mabry v. Johnson, 467 U.S. 504,

508, 104 S. Ct. 2543, 2546-47 (1984); Brady v. United States, 397 U.S. 742, 748, 90 S. Ct. 1463,

1469 (1970); Boykin v. Alabama, 395 U.S. 238, 242-43 & n.5, 89 S. Ct. 1709, 1711-12 & n.5

(1969); Hanson v. Phillips, 442 F.3d 789, 797-98 (2d Cir. 2006); Wilson v. McGinnis, 413 F.3d 196,

198-200 (2d Cir. 2005); United States v. Blackwell, 199 F.3d 623, 625-26 (2d Cir. 1999); Innes v.

Dalsheim, 864 F.2d 974, 977 (2d Cir. 1988), cert. denied, 493 U.S. 89, 110 S. Ct. 50 (1989).[14]

---

[13]    For additional decisions by this Judge discussing the legal standards for whether a guilty plea was coerced, in language substantially similar to that in this section of this Opinion and Order, see, e.g., Gomez v. Duncan, 02 Civ. 0846, 2004 WL 119360 at *18 (S.D.N.Y. Jan. 27, 2004) (Peck, M.J.); Marcelin, v. Garvin, 97 Civ. 2996, 1999 WL 977221 at *5 (S.D.N.Y. Oct. 26, 1999) (Peck, M.J.); Singh v. Kuhlmann, 94 Civ. 2213, 1995 WL 870113 at *5 (S.D.N.Y. Aug. 25, 1995) (Peck, M.J.), report & rec. adopted, 1996 WL 337283 (S.D.N.Y. June 19, 1996); Foreman v. Garvin, 99 Civ. 9078, 2000 WL 631397 at *10 (S.D.N.Y. May 16, 2000) (Peck, M.J.).

[14]    See also, e.g., Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir.), cert. denied, 479 U.S. 805, 107 S. Ct. 248 (1986); Sabino v. Greiner, 99 Civ. 12022, 2000 WL 328904 at *2 (S.D.N.Y. Mar. 29, 2000);  Heron v. People, State of New York, 98 Civ. 7941, 1999 WL 1125059 at *5 (S.D.N.Y. Dec. 8, 1999); James v. Greiner, 97 Civ. 2652, 1999 WL 619636 at *4
(continued...)

"The standard for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Urena v. People of the State of New York, 160 F. Supp. 2d 606, 610 (S.D.N.Y. 2001) (Weinstein, D.J.) (quoting Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992)). A plea is involuntary where the defendant did not have "'knowledge of the nature of the constitutional protections he will forgo by entering his plea.'" Marcelin v. Garvin, 1999 WL 977221 at *5 (quoting Matusiak v. Kelly, 786 F.2d at 543).[15/] "A plea is 'intelligent' and 'voluntary' when a defendant had the advice of counsel, understood the consequences of his plea and the plea was not physically or mentally coerced." Heron v. People, 98 Civ. 7941, 1999 WL 1125059 at *5 (S.D.N.Y. Dec. 8, 1999); accord, e.g., Foreman v. Garvin, 2000 WL 631397 at *10; see, e.g., Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir.), cert. denied, 488 U.S. 890, 109 S. Ct. 224 (1988); France v. Strack, No. 99-CV-2510, 2001 WL 135744 at *3 (E.D.N.Y. Jan. 30, 2001) ("Pleading guilty to avoid a more severe sentence does not in itself qualify as involuntary because the plea can nonetheless be the 'product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage.'"); Ramirez v. Headley, 98 Civ. 2603, 1998 WL 788782 at *5 (S.D.N.Y. Nov. 10, 1998); Martuzas v. Reynolds,

---

[14/]     (...continued)
        (S.D.N.Y. Aug. 16, 1999); Charnock v. Herbert, 60 F. Supp. 2d 91, 99-100 (W.D.N.Y. 1999); Ramirez v. Headley, 98 Civ. 2603, 1998 WL 788782 at *5 (S.D.N.Y. Nov. 10, 1998); Thomas v. Senkowski, 968 F. Supp. 953, 955 (S.D.N.Y. 1997).

[15/]     Accord, e.g., Sanchez v. Senkowski, No. 93- CV-4385, 1996 WL 1057150 at *3 (E.D.N.Y. June 19, 1996); Wax v. Keane, 89 Civ. 7843, 1991 WL 220962 at *3 (S.D.N.Y. Oct. 17, 1991).

983 F. Supp. 87, 94 (N.D.N.Y. 1997) (Pooler, D.J.); Phan v. McCoy, No. 94-CV-1596, 1997 WL 570690 at *6 (N.D.N.Y. Aug. 28, 1997) (Pooler, D.J.) ("The mere fact that a defendant pleaded guilty solely to limit his possible penalty does not make that plea involuntary."); United States v. Millan-Colon, 829 F. Supp. 620, 635 (S.D.N.Y. 1993), aff'd, 17 F.3d 14 (2d Cir. 1994).  A "'plea of guilty entered by one fully aware of the direct consequences' of the plea is voluntary in a constitutional sense 'unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper.'"  Bousley v. United States, 523 U.S. at 619, 118 S. Ct. at 1609 (ellipses omitted) (quoting Brady v. United States, 397 U.S. at 744, 90 S. Ct. at 1472)).[16]

"'It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'"  Bousley v. United States, 523 U.S. at 621, 118 S. Ct. at 1610 (quoting Mabry v. Johnson, 467 U.S. at 508, 104 S. Ct. at 2547-47); see also, e.g., Ramirez v. Headley, 1998 WL 788782 at *5.

"As 'the Supreme Court has noted, statements made at plea allocutions "carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceeding."'"  Marcelin v. Garvin, 1999 WL 977221 at *7 (quoting Singh v. Kuhlmann, 1995 WL 870113 at *7 (quoting Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977))); see, e.g., Adames v. United States, 171 F.3d 728, 732-33 (2d Cir. 1999) (statements at plea allocution "'carry a strong presumption of verity' . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them," citing cases); United States v. Torres, 129 F.3d 710,

---

[16]      Accord, e.g., Mabry v. Johnson, 467 U.S. at 59, 104 S. Ct. at 2547; United States v. Rossillo, 853 F.2d 1062, 1064 (2d Cir. 1988); Smylis v. City of New York, 25 F. Supp. 2d 461, 465 (S.D.N.Y. 1998); see also, e.g., Willbright v. Smith, 745 F.2d 779, 780-81 (2d Cir. 1984).

715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea."); United States v. Gonzalez, 970 F.2d 1095, 1100-01 (2d Cir. 1992);  Panuccio v. Kelly, 927 F.2d 106, 110-11 (2d Cir. 1991); Martinez v. Costello, 03 Civ. 2763, 2004 WL 26306 at *6 (S.D.N.Y. Jan. 5, 2004) ("'Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal.'").[17/]

Here, although Lopez claims that he was coerced by his counsel to enter a guilty plea, the statements that he made during the plea hearing "demonstrate that the plea was knowing in that it was entered with full knowledge of the charge and the consequences of pleading guilty." Martinez v. Costello, 2004 WL 26306 at *6.  At the plea allocution, Justice Berkman advised Lopez of the rights he was giving up by pleading guilty (Dkt. No. 5: Dannelly Aff. Ex. A: Plea Tr. 7-8), and Lopez allocuted as to how he committed the crimes with which he was charged, including the fact that he had the stolen credit cards in his wallet when he was arrested (Plea Tr. 2-4; see also S. 7-8).[18/]

---

[17/]    See also, e.g., Santobello v. United States, 94 Cr. 119, 97 Civ. 4404, 1998 WL 113950 at *2-3 (S.D.N.Y. Mar. 13, 1998); United States v. Caesar, 94 Cr. 59, 1995 WL 312443 at *3 (S.D.N.Y. May 23, 1995) ("The Court notes that statements made during a plea allocution carry a strong presumption of verity.  Such statements are conclusive absent credible reason justifying departure from their apparent truth.") (citations & internal quotation marks omitted); United States v. Napolitano, 212 F. Supp. 743, 747 (S.D.N.Y. 1963) (Weinfeld, D.J.) ("The defendant's admissions . . . [at guilty plea] are solemn declarations; they are not to be lightly disregarded in favor of his present self-serving assertion . . .").

[18/]    On direct appeal, Lopez's new counsel (Center for Appellate Litigation), in describing the "incidents" leading to Lopez's indictments, implicitly admitted that Lopez was caught "red-handed."  Lopez's First Department brief stated that "upon his arrest, those two charge cards were found on his person.  The charge cards had been removed from [the victims'] apartment during an earlier burglary."  (Dkt. No. 5: Dannelly Aff. Ex. C: Lopez 1st Dep't Br. a 3.;
(continued...)

Justice Berkman also noted on the record that Lopez would be giving information to the government but that Justice Berkman was "making no promises in this regard," and that while defense counsel had said that Lopez was "optimistic," such optimism before Justice Berkman was "not a good idea." (Plea Tr. 6-7; see page 3 above.)  Indeed, Justice Berkman said that she did not "want to pull anything over on" Lopez. (Plea Tr. 7.) Justice Berkman then specifically asked Lopez whether any promises had been made, other than the promise of "a sentence of no more than ten yeas," and Lopez responded "No, Your Honor."  (See pages 2-3 above.)

At sentencing, on direct appeal, and in his habeas petition and traverse, Lopez claims that his plea allocution was a lie.  (S. 4-8; see generally Lopez Traverse.)  Lopez claims that he told his attorney he had an alibi for the date of one of the burglaries, but his attorney told him the prosecutor wanted him to admit he committed the crimes, but that he would get a reduced sentence by cooperating with the government.  (See S. 4-6.)  In reality, Lopez is not asserting that counsel coerced him into pleading guilty as much as he is claiming that the prosecution did not live up to the terms of the alleged off-the-record sentencing-cooperation agreement.  Lopez, however, has never made the latter claim.  But even aside from his plea allocution that he committed the crimes and that there was no promise other than a sentence of no more than ten years, Justice Berkman discussed the cooperation issue with Lopez during the plea allocution – Justice Berkman advised Lopez that while

---

18/     (...continued)
accord, Dannelly Aff. Ex. D: State 1st Dep't Br. at 2.)  Lopez's brief continued:  "After Mr. Lopez's arrest on those charges, the police, armed with a warrant, searched his apartment.  In the apartment, police offiers recovered a necklace that had been reported stolen from an apartment on West 76th Street.  Upon analysis, a fingerprint discovered in that apartment was found to match Mr. Lopez." (Lopez 1st Dep't Br. at 3; accord, State 1st Dep't Br. at 2.)

he could provide information to the government, he should not be optimistic that that would lead to a lesser sentence before Justice Berkman.  (<u>See</u> page 3 above.)

   Thus, Justice Berkman and the First Department were free to and did credit Lopez's statements at his plea allocution that he was not coerced and had received no promises other than a sentence of no more than ten years over his later allegation of "coercion," and this Court cannot say that that decision was contrary to or an unreasonable appliction of Supreme Court caselaw.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Rosen</u>, 409 F.3d 535, 544, 545-58 (2d Cir. 2005) (Upholding denial of defendant's motion to withdraw his guilty plea where defendant's "statements under oath at his plea allocution, severely undermined his assertion that he would not have pleaded guilty if he had known that he would be required to serve a substantial period of time in prison, and made his claim that his plea was involuntary 'entirely unpersuasive.'") (citations omitted); <u>Rosenberger</u> v. <u>United States</u>, 133 Fed. Appx. 799, 801 (2d Cir. 2005) (Defendant "has set forth no evidence, other than his self-serving, conclusory allegations, that he was coerced into pleading guilty.  Moreover, the plea allocution indicates that [defendant's] guilty plea . . . was knowing and voluntary."); <u>United States</u> v. <u>Davis</u>, 48 Fed. Appx.  809, 811-12 (2d Cir.  2002) ("During his plea allocution, [defendant] admitted his guilt under oath and in his own words, and stated that his plea was free and voluntary, that no threats or untoward promises had been made to induce his plea, and that he was satisfied with the advice of counsel. . . . Although since his guilty plea [defendant] has consistently protested his innocence of the charges [and claims his counsel coerced him to plead guilty], a claim of innocence [and coercion by counsel] is not a basis for withdrawing a guilty plea unless supported by evidence."); <u>United States</u> v. <u>Bonilla</u>, 17 Fed. Appx. 11, 13 (2d Cir. 2000) ("This Circuit has

consistently affirmed denials of motions to withdraw guilty pleas when the defendant's allegations are 'directly contradicted by his clear statements at allocution' that contained sufficient factual detail about the offense."); United States v. Torres, 129 F.3d at 715; United States v. Gonzalez, 970 F.2d at 1100-01; Baker v. Murray, 460 F. Supp. 2d 425, 433 (W.D.N.Y. 2006) ("Furthermore, petitioner has not provided credible evidence that would justify overlooking his statements under oath that he was choosing to plead guilty of his own accord.  In the context of a plea allocution, a defendant's '[s]olemn declarations in open court carry a strong presumption of verity.'"); Gomez v. Duncan, 2004 WL 119360 at *19 ("This Court may credit [petitioner's] statements at the plea allocution – that his guilty plea was voluntary and not the result of any threats or promises – over his later allegations of coercion.") (record cites omitted; citing cases); Urena v. People of the State of New York, 160 F. Supp. 2d at 611 (Petitioner "stated on the record that he knew that he was giving up the right to trial and the safeguards that accompany that right, that he was not threatened or forced to plead guilty, and that he sold over two ounces of cocaine to an undercover officer.  These statements undermine petitioner's claim that his plea was involuntary or that he is innocent of the crime to which he pled guilty.") (citing cases); France v. Strack, 2001 WL 135744 at *4 ("Where a petitioner's claims of mistake and coercion find no support in the record and are contradicted by the statements made under oath at the plea proceeding, they do not entitle him to relief."); United States v. Hoffenberg, 169 F.R.D. 267, 275 (S.D.N.Y. 1996), aff'd, Nos. 97-1159, 97-1166, 164 F.3d 620 (table), 1998 WL 695933 (2d Cir. Sept. 22, 1998);  Singh v. Kuhlmann, 1995 WL 870113 at *7; United States v. Caesar, 1995 WL 312443 at *4 ("This Court is justified in crediting [defendants']

sworn statements at allocution over their later self-serving allegations of coercion."); <u>United States</u> v. <u>Collado-Gomez</u>, 674 F. Supp. 426, 428 (E.D.N.Y. 1987).

The Court finds that Lopez's guilty plea was not coerced by his counsel.

**B.    The Trial Court Properly Denied Lopez's Request To Withdraw His Guilty Plea Without Holding A Hearing Or Appointing New Counsel**

Lopez claims that a "[t]he trial court deprived [him] of his rights to counsel by not assigning him conflict-free counsel after [Lopez] asserted that his counsel had coerced him into pleading guilty."  (Dkt. No. 1: Pet. ¶ 13(1).)  Lopez also claims that the trial court's denial of his request for an <u>Argentine</u> evidentiary hearing was improper.  (Pet. ¶ 13(2).)

The Second Circuit considered and rejected similar claims in <u>Hines</u> v. <u>Miller</u>, 318 F.3d 157 (2d Cir.), <u>cert. denied</u>, 538 U.S. 1040, 123 S. Ct. 2089 (2003).  In <u>Hines</u>, petitioner Hines pled guilty to second degree murder, but before sentencing "filed a pro se motion to withdraw his plea on the ground that he was innocent and had been coerced into pleading guilty by his attorney." <u>Hines</u> v. <u>Miller</u>, 318 F.3d at 159.  At sentencing, "defense counsel declined to comment on [petitioner's] allegation that counsel had pressured him into pleading guilty, but asked to be relieved in the event the court allowed withdrawal of the plea," and asked "to have new counsel appointed to argue the motion on proper papers."  <u>Hines</u> v. <u>Miller</u>, 318 F.3d at 159.  Hines told the state court that despite his assertions at the time of his plea that he had not been coerced, "he was innocent of the crime and had only pleaded guilty 'out of fear, pressure, extreme pressure.'"  <u>Hines</u> v. <u>Miller</u>, 318 F.3d at 159.  The sentencing court denied Hines' motion to withdraw his guilty plea, asserting that Hines "had inculpated himself fully when he entered the guilty plea and that he had stated then that

no one had forced him to plead guilty."  <u>Hines</u> v. <u>Miller</u>, 318 F.3d at 159.  The Appellate Division affirmed, despite Hines' claims that the trial court erred in denying the motion to withdraw his guilty plea without appointing new counsel and without holding an evidentiary hearing.  <u>Hines</u> v. <u>Miller</u>, 318 F.3d at 159.

  The Second Circuit first addressed petitioner Hines' claim that he at least was entitled to an evidentiary hearing in state court, and rejected that claim under the AEDPA, holding:

> Both federal and state precedent have established that a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea.  In light of these precedents, the [state sentencing court's] failure to hold an evidentiary hearing on a motion to withdraw a plea does not offend a deeply rooted or "fundamental" principle of justice.  Thus, under AEDPA's deferential standard and the Supreme Court's decision in <i>Medina</i>,[19/] the Appellate Division's conclusion that the state court had conducted a "thorough inquiry, . . . [and] properly denied defendant's motion to withdraw his guilty plea [where] [t]he record establishes that defendant made a voluntary plea and fails to substantiate his claims of coercion and innocence," was not an unreasonable application of clearly established Federal law.

<u>Hines</u> v. <u>Miller</u>, 318 F.3d at 162 (citations omitted); <u>accord</u>, <u>e.g.</u>, <u>Smith</u> v. <u>Filion</u>, No. 04-CV-1026, 2007 WL 274780 at *7 (N.D.N.Y. Jan. 26, 2007) (A "criminal defendant seeking permission to withdraw his or her plea is not, as a matter of federal law, entitled to an evidentiary hearing with respect to such a motion," citing <u>Hines</u>.); <u>Rivera</u> v. <u>Superintendent, Wyoming Corr. Fac.</u>, No. 9:03-CV-1058, 2006 WL 2946265 at *8 (N.D.N.Y. Oct. 12, 2006); <u>Allen</u> v. <u>McGinnis</u>, No. 05-CV-2699, 2006 WL 1982871 at *6 (E.D.N.Y. July 13, 2006); <u>Viscomi</u> v. <u>Conway</u>, 438 F. Supp. 2d 163

---

[19/]  The Supreme Court found that the analytical framework used to decipher whether state criminal procedural rules violate due process is to determine if they "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  <u>Medina</u> v. <u>California</u>, 505 U.S. 437, 445-46, 112 S. Ct. 2572, 2577 (1992) (quoting <u>Patterson</u> v. <u>New York</u>, 432 U.S. 197, 202, 97 S. Ct. 2319, 2322 (1977)).

(W.D.N.Y. 2006) (Petitioner "was not entitled, as a matter of federal constitutional law, to a full evidentiary hearing on his motion to withdraw" his guilty plea, citing Hines.); Reyes v. Phillips, 02 Civ. 7319, 2005 WL 2757541 at *6 (S.D.N.Y. Oct. 24, 2005); Rodriguez v. Zon, No. 01-CV-2036, 2004 WL 1752418 at *5 (E.D.N.Y. Aug. 5, 2004); Falas v. Phillips, 03 Civ. 4839, 2004 WL 1730289 at *11-12 (S.D.N.Y. Aug. 3, 2004); Rowe v. Miller, 299 F. Supp. 2d 231, 240-41 (S.D.N.Y. 2004); Martinez v. Costello, 03 Civ. 2763, 2004 WL 26306 at *6-7 (S.D.N.Y. Jan. 5, 2004) ("In light of the lack of a federal constitutional right to an evidentiary hearing in this situation [i.e., seeking to withdraw a guilty plea], the Appellate Division's decision upholding the failure to hold such a hearing was not 'contrary to, or involved an unreasonable application of, clearly established Federal law.'"); Reed v. Duncan, No. Civ. 900CV1177, 2007 WL 133798 at *7 (N.D.N.Y. Dec. 10, 2003), report & rec. adopted, 2007 WL 102075 (N.D.N.Y. Jan. 12, 2007); Rivera v. New York, 00 Civ. 0399, 2003 WL 22234697 at *4 (S.D.N.Y. Aug. 28, 2003); Cosey v. Walsh, 02 Civ. 6251, 2003 WL 1824640 at *3 n.6 (S.D.N.Y. Apr. 8, 2003); Jenkins v. Artuz, No. 98-CV-7837, 00-Misc.-0066, 2003 WL 21499889 at *3 (E.D.N.Y. June 13, 2003) (Weinstein, D.J.); Hutchings v. Herbert, 260 F. Supp. 2d 571, 581 (W.D.N.Y. 2003).

   In accordance with Hines and its progeny, this Court finds that Justice Berkman's denial of Lopez's request for an Argentine evidentiary hearing on his motion to withdraw his guilty plea was proper and not an unreasonable application of clearly established federal law.

   The Second Circuit in Hines next turned to the issue of whether the trial court erred in not appointing new counsel to argue the petitioner's plea withdrawal motion.  Hines v. Miller, 318

F.3d at 162-64.  The Second Circuit recognized that the federal appellate courts have used various approaches to address this issue.  Hines v. Miller, 318 F.3d at 164.  The Second Circuit has "applied Strickland v. Washington, Cuyler v. Sullivan, or a similar analysis to determine whether the defendant received ineffective assistance of counsel, and have generally decided the case on the basis of whether the underlying motion had sufficient merit to create an actual conflict of interest or present a 'plausible alternative defense strategy.'"  Hines v. Miller, 318 F.3d at 163.[20/]  A second group of courts had sought to determine "whether the failure to appoint substitute counsel on the motion to withdraw was a violation of the right to counsel."  Hines v. Miller, 318 F.3d at 163.  Other "courts have applied more than one analysis."  Hines v. Miller, 318 F.3d at 163-64.  The Second Circuit noted that "numerous reviewing courts, irrespective of the analysis employed, have affirmed the denial of a withdrawal motion despite the failure to appoint new counsel."  Hines v. Miller, 318 F.3d at 164 (citation omitted).

---

[20/]     Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984); Cuyler v. Sullivan, 446 U.S. 335, 1000 S. Ct. 1708 (1980).

For a discussion of the Strickland v. Washington standard for ineffective assistance of counsel in general, in connection with a guilty plea or sentencing, and the interplay between the AEDPA and Strickland, see, e.g., Rivera v. United States, 06 Civ. 14421, 04 Cr. 407, 2007 WL 1953430 at *6-7 (S.D.N.Y. July 6, 2007) (Peck, M.J.) (& cases cited therein); Ahmed v. United States, 05 Civ. 7656, 2006 WL 328339 at *9 (S.D.N.Y. Feb. 14, 2006) (Peck, M.J.) (& cases cited therein).

For a discussion of the Cuyler v. Sullivan standard governing an ineffective assistance of counsel claim based on an asserted conflict of interest, see, e.g., Quinones v. Miller, 01 Civ. 10752, 2003 WL 21276429 at *26-28 (S.D.N.Y. June 3, 2003) (Peck, M.J.) (& cases cited therein).

The Second Circuit stated that "[t]he Supreme Court has, of course, issued numerous opinions concerning various aspects of a defendant's right to counsel.  But the [Supreme] Court has never specifically addressed a claim such as the one before us, nor has it stated how such a claim should be analyzed, i.e., as a claim that petitioner was denied his right to counsel because he was effectively unrepresented on his motion to withdraw his plea, or as a claim that petitioner was denied the effective assistance of counsel because an actual conflict of interest adversely affected counsel's performance."  Hines v. Miller, 318 F.3d at 163 (citations omitted).

The Second Circuit concluded that "[g]iven the many divergent approaches and outcomes in federal courts that have applied clearly established Supreme Court precedent to the facts at issue and the absence of any Supreme Court decision concerning this type of claim, we find no basis for concluding . . . that the Appellate Division's decision here constituted an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States."  Hines v. Miller, 318 F.3d at 164.[21]

Here, as in Hines, Lopez claims that "[t]he trial court deprived [him] of his rights to counsel by not assigning him conflict-free counsel after [he] asserted that his counsel had coerced him into pleading guilty."  (Pet. ¶ 13(1).)  The First Department found that the "[a]fter sufficient

---

[21]   See also, e.g., Benitez v. Green, 02 Civ. 63321, 2005 WL 289753 at *10-11 (S.D.N.Y. Jan. 31, 2005); Martinez v. Costello, 2004 WL 26306 at *7-8; Rivera v. New York, 2003 WL 22234697 at *5 ("In light of the Second Circuit's decision in Hines, the Appellate Division's decision regarding [petitioner's] ineffective assistance of counsel claim [seeking new counsel for motion to withdraw guilty plea] is unquestionably not an unreasonable application of clearly established Federal law."); Jenkins v. Artuz, 2003 WL 21499889 at *3; Hutchings v. Herbert, 260 F. Supp. 2d at 581.

inquiry, the court properly denied defendant's request to withdraw his guilty plea without appointing new counsel." <u>People</u> v. <u>Lopez</u>, 15 A.D.3d 285, 285-86, 789 N.Y.S.2d 497, 497-98 (1st Dep't ), <u>appeal denied</u>, 4 N.Y.3d 855, 797 N.Y.S.2d 429 (2005).  The First Department went on to find that Lopez's "assertion that his attorney misled him as to the terms and consequences of his plea was contradicted by the thorough plea allocution and was patently meritless.  Accordingly, there was no conflict of interest requiring new counsel." <u>People</u> v. <u>Lopez</u>, 15 A.D.3d at 286, 789 N.Y.S.2d at 498.  As in <u>Hines</u>, the First Department's finding regarding Lopez's claims that the trial court erred in its decision to deny his request to withdraw his guilty plea without appointing new counsel was not an unreasonable application of Federal law.  Lopez's claim that he was "coerced" was without merit. (<u>See</u> Point II.A above.)  At best, Lopez was claiming that he pleaded guilty because of a promise that if he cooperated with the government, he would get a sentence of less than ten years.  (<u>See</u> page 20 above.)[22/]  The plea colloquoy reflected, however, that Justice Berkman had informed Lopez that he could cooperate with the government but should not be "optimistic" that Justice Berkman would give him a lesser sentence for such cooperation, in light of his extensive record.  (<u>See</u> page 3 above.) Lopez then confirmed to Justice Berkman that no other promises had been made to him.  (<u>See</u> page 3 above.)  Neither at sentencing, nor on appeal when he was represented by new counsel, did Lopez present any additional argument as to counsel's alleged coercion, and his alibi claim was plainly absurd in light of the evidence against him.  (<u>See</u> pages 4-6 & 19-20 n.18 above.)  It is no wonder

---

[22/]     Justice Berkman, however, also had advised Lopez that the statutory minimum was seven years.  (Plea Tr. 5.)

that the First Department denied Lopez's claim, and that decision did not constitute an unreasonable application of clearly established federal law (indeed, this Court would agree with that decision even if AEDPA deference did not apply).

Finally, Lopez also asserts that he should have been provided new counsel for sentencing. (Pet. ¶ 13(2).) Specifically, Lopez claims counsel should have "corrected the prosecutor's remark that 'the promised sentence was ten years,'" when in fact it was "no more than ten years." (Lopez Traverse at 10.) Lopez also attacks counsel's decision not to make any argument as to sentencing. (Lopez Traverse at 10, citing S. 9-10, quoted at page 6 above.)

Justice Berkman clearly knew that the promise was for a sentence of "no more than ten years," not "ten years." (See Plea Tr. 5-6, quoted at page 2 above.) That is obvious – Justice Berkman did not sentence Lopez to ten years, but rather the longest of the concurrent sentences was for nine years imprisonment. (See page 6 above.) Lopez recognizes that the statutory minimum sentence was seven years. (See Lopez Traverse at 10.) Lopez's only suggestion as to what counsel should have said at sentencing is that "[c]ounsel could have reminded the court that it had previously agreed that an eight year sentence was appropriate." (Lopez Traverse at 10.) That is not accurate, and in any event, there was no need to remind Justice Berkman, who had said at the beginning of the sentencing hearing that she "had previously offered Mr. Lopez eight years which Mr. Lopez declined." (S. 2.) It is not uncommon for a state judge to impose a higher sentence than that previously offered in a plea turned down by a defendant. Cf. Corbitt v. New Jersey, 439 U.S. 212, 99 S. Ct. 492 (1978); Wheeler v. Phillips, No. 05-CV-4399, 2006 WL 2357973 at *9-11 (E.D.N.Y.

30

Aug. 15, 2006); Naranjo v. Filion, 02 Civ. 5449, 2003 WL 1900867 at *10-13 (S.D.N.Y. Aug. 16, 2003) (Peck, M.J.) (& cases cited therein).

Justice Berkman did not give Lopez the maximum – ten years – that she could have under the plea agreement; rather, she gave Lopez nine years (only a year longer than the eight year offer that he had rejected).   There is no reason to believe that Justice Berkman would have given Lopez a lesser sentence if counsel at sentencing had made the arguments Lopez now suggests.   The First Department's decision that counsel was not ineffective at sentencing was not an unreasonable application of federal law.

## **CONCLUSION**

For the reasons set forth above, Lopez's habeas petition is **DENIED** and a certificate of appealability does not issue.

SO ORDERED.

DATED:   New York, New York
         July 17, 2007

Andrew J. Peck
United States Magistrate Judge

Copies to:   Richard Lopez
            Ashlyn Dannelly, Esq.

H:\LOPEZvMILLER